UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK HOTEL AND GAMING TRADES
COUNCIL, AFL-CIO,

                                         Petitioner,

                    -v-

CSC HUDSON *et al.*,

                                         Respondents.

24 Civ. 5025

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

      Petitioner New York Hotel and Gaming Trades Council, AFL-CIO seeks confirmation of a consented arbitral award (the "Award") issued against respondent CSC Hudson, LLC ("CSC Hudson"). CSC Hudson is a joint employer with Hudson 1702, LLC, Hudson 1701/1706, LLC, and 353 W 57 1704, LLC (collectively, the "Employers"), each of whom are named as respondents alongside CSC Hudson. *See* Dkt. 1 ("Pet.") at ¶ 1. The Employers collectively own and operate a building formerly known as the Hudson Hotel. *Id.* ¶ 5. In 2022, after conversion of the Hudson Hotel into residential units, the Employers entered into a series of agreements with the Union that provided for enhanced severance pay to certain Union members employed by the Hotel. *Id.* ¶¶ 9–16. When the Hotel failed to honor those obligations, the Union commenced arbitration proceedings. *Id.* ¶¶ 17–23. The arbitration ended in a settlement agreement that awarded a total of $366,394.40 to the Union. *Id.* ¶ 20. As alleged in the Petition, the Employers have since failed to honor the Award. *Id.* ¶ 24. The Union thus brings this suit under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking confirmation of the Award plus pre- and post-judgment interest. For the reasons that follow, the Court grants the Petition.

1

## I. Background

### A. The Parties and Their Agreements

Petitioner New York Hotel and Gaming Trades Council, AFL-CIO (the "Union") is a labor organization within the scope of the LMRA, 29 U.S.C. § 152(5). Pet. ¶ 4. The Union represents nearly 40,000 workers employed in the hotel, hospitality, and gaming industries in New York State and Northern New Jersey. Dkt. 20 ("Pet. Mem.") at 1. According to the unopposed Petition, respondents CSC Hudson, Hudson 1702, LLC, Hudson 1701/1706, LLC, and 353 W57 1704, LLC are affiliated entities that own, operate, and/or manage the former Hudson Hotel, located at 356 West 58th Street, New York, New York 10019. Pet. ¶ 5; Dkt. 1, Ex. B. Respondents are alleged to be "employers" within the meaning of § 2(2) of the LMRA, 29 U.S.C. § 152. Pet. ¶ 5.

Terms and conditions of employment for Union workers employed by hotels within the five boroughs of New York City are negotiated and governed by an Industry-Wide Agreement ("IWA"). *See id.* ¶ 6; Pet. Mem. at 1–2. The IWA establishes, *inter alia*, a living wage (Art. XIII and Schedule A), comprehensive health care (Art. XXXIII and Schedule B) and a secure retirement (Art. XXXIV and 35). *See id.* at 2. Salient here, Article 57 of the IWA provides for "conversion severance" to employees terminated due to conversion of an employer's hotel to residential use. Pet. ¶ 8. The IWA also requires that disputes between Union members and their employers be submitted to arbitration before the Office of the Impartial Chairperson ("OIC"), a panel of industry-expert arbitrators. *Id.* ¶ 7.

In 2022, following the decision to convert the Hudson Hotel to residential use, the Union and the Employers entered into an agreement that governed the impact of the conversion on Hotel employees. *Id.* ¶ 9. Relevant here, the agreement provided for the payment of enhanced

severance pay to the Union's engineering employees in the amount of 35 days per year worked, in addition to the baseline severance pay provided for by the IWA. *Id.* ¶ 10. Two supplemental agreements, filed at Docket 1, Exhibits C–D, extended the enhanced severance package to "those remaining Engineers who did not previously take the Enhanced Severance," and provided that "failure by the Employer to make those payments by December 31, 2023, w[ill] result in a 15% penalty on the amounts owed." *Id.* ¶¶ 12, 15. The second supplemental agreement further provides that disputes between the parties arising out of the agreement are subject to binding arbitration. *See id* ¶ 16. The agreement incorporated the IWA's arbitration provision by reference. *See id.*

### B.  The Arbitral Award

As alleged in the Union's Petition, the Employers breached its obligations under the IWA and ensuing agreements by failing to make the requisite severance payments to its engineering employees by December 31, 2023. *Id.* ¶ 17. The Union thus initiated arbitration proceedings against the Employers. *Id.* ¶ 19.

On April 1, 2024, the parties appeared at a hearing before Impartial Chairperson ("IC") Philip J. Kellett. *Id.* The hearing culminated in a settlement agreement. *See id.* Under the agreement, the IC rendered an arbitral award on consent. *See id.*; Dkt. 1, Ex. E. In issuing the Award, the IC noted that "[t]he Arbitrator was assured by the parties that the Settlement constituted their complete understanding and had been entered into voluntarily," and observed that the settlement "appears to be reasonable and fair." *Id.*

The Award consisted of the following:

1. CSC Hudson, LLC, 353 W57 1704, Hudson 1702, LLC and Hudson 1701/1706, LLC (collectively the "Employer") shall pay, by cashier check, to each of the former employees listed below the following amounts per Paragraph 3(b) of the

3

    Second Supplemental Memorandum of Agreement ("MOA") between the New York Hotel and Gaming Trades Council, AFL-CIO:

        a. Mohammed Abdel-Rahim        $ 98,004.60

        b. Joe Woods, Jr.                   $ 87,449.40

        c. Kurt Bertie                      $ 98,004.60

        d. Recaldo G. Barnes             $ 82,935.80

2. Employer shall withhold statutory deductions, i.e. income tax withholdings, from the amounts listed in paragraph 1 above.

3. The cashier checks for the payments required above shall be delivered no later than 12:00 PM, April 23, 2024 to the office of Pitta LLP, 120 Broadway, 28th Floor, New York, New York 10271, attn: Joseph Farelli ("Union Counsel").

4. Employer shall provide Union Counsel copies of documentation that withheld taxes of the amounts listed above, as well as the severance payments made in 2023, were remitted to the taxing authorities no later than April 24, 2024.

5. Absent confirmation that the payments listed above in Paragraph 1 were delivered as required pursuant to Paragraph 3 above and such checks were honored by banks, the Employer shall pay 15% in addition to the amounts listed above.

6. Compliance with this Consent Award will satisfy the MOA.

*Id.*

### C. This Action

On July 2, 2024, the Union commenced this action by filing the Petition, accompanying exhibits, and a memorandum of law in support. Dkts. 1, 10. The unopposed Petition alleges that the Employers have failed to pay the amounts owed under the Award. *See* Pet. ¶ 24. Petitioner seeks confirmation of the Award plus pre- and post-judgment interest. *See* Pet. at 7. On July 16 and 24, 2024, Petitioner filed affidavits of service confirming that the Petition and supporting materials had been served upon Respondents. Dkts. 15–18.

On August 7, 2024, this Court issued an Order clarifying that "[p]roceedings to confirm an arbitral award must be treated as akin to a motion for summary judgment." Dkt. 19 (quoting *D.H Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)). Accordingly, the Court ordered petitioner to file and serve a memorandum of law in support of its Petition by August 28, 2024, and set an opposition deadline of September 11, 2024 and a reply deadline of September 18, 2024. Dkt. 19. Petitioner timely filed a brief in support of its Petition. Dkt. 20. No opposition was filed.

## II. Discussion

### A. Legal Standards

Arbitral awards are not self-enforcing. Rather, they "must be given force and effect by being converted to judicial orders by courts." *D.H. Blair*, 462 F.3d at 104.

The Federal Arbitration Act provides a "'streamlined' process for a party seeking 'a judicial decree confirming an award.'" *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865, 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (citation omitted). In this Circuit, "[t]he showing required to avoid summary confirmation of an arbitration award is high." *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference."). That deference is especially appropriate for arbitral awards rendered in the labor context: "[A] federal court's review of labor arbitration awards is

5

narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Assoc.*, 820 F.3d 527, 532 (2d Cir. 2016); *see also id.* at 536 (noting the LMRA's "particular emphasis on private arbitration of grievances" as means of "promoting industrial stabilization" (citation omitted)).

Review of an arbitral award by a district court thus "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman*, 2011 WL 6778499, at *2 (quoting *Willemijn*, 103 F.3d at 12). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

Courts evaluate a motion to confirm an arbitral award against a party that has failed to oppose the motion under the legal standards applicable to a motion for summary judgment. *See D.H. Blair*, 462 F.3d at 109–10. To prevail on such a motion, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court must view all facts "in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation omitted). In determining whether there are genuine issues of material fact, the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

Even when a motion for summary judgment is unopposed, as here, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). In reviewing an unopposed motion for confirmation of an arbitral award,

> a court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

*D.H. Blair*, 462 F.3d at 110 (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244). Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 6 Civ. 5106, 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).

## B. Confirmation of the Arbitral Award

Based on the consented Award, and on the very limited review that is appropriate, the Court finds that summary judgment is warranted. Petitioner has shown there is no material issue of fact in dispute. The IC acted well within the broad scope of authority granted to him by the parties and by the IWA. In issuing the Award, the IC noted that the parties represented that the settlement "had been entered into voluntarily" and concluded that the settlement "appears to be reasonable and fair." Dkt. 1, Ex. E. The Employers do not dispute this. The Court thus confirms the Award in favor of the Union in full.

Based on the complete lack of factual dispute noted in the Award, the Court concludes that there is at least a "barely colorable justification for the outcome reached," and by all

7

indications a more than colorable one. *Landy Michaels Realty Corp.*, 954 F.2d at 797. Accordingly, the Court confirms the Award in favor of petitioner, applying the 15% penalty triggered by the Employers' late payment: $112,705.29 to Mohammed Abdel-Rahim, $100,566.81 to Joe Woods, Jr., $112,705.29 to Kurt Bertie, and $95,376.17 to Recaldo G. Barnes.

### C.    Pre-Judgment Interest

The Union also seeks pre-judgment interest. *See* Pet. at 7. "New York law provides for prejudgment interest running from the date of an arbitration award until the entry of final judgment." *Finger Lakes Bottling Co. v. Coors Brewing Co.*, 748 F. Supp. 2d 286, 292 (S.D.N.Y. 2010) (citing N.Y. C.P.L.R. § 5002); *see also In re Arb. Between Westchester Fire Ins. Co. v. Massamont Ins. Agency Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005) ("[A]n arbitration award confirmed under the FAA bears interest from the date of the award until judgment confirming it." (citation omitted)).

The Court therefore grants the Union pre-judgment interest calculated from the date of the Final Award until the entry of judgment. In accord with "the common practice among the courts of this Circuit," the Court "set[s] the interest rate at 9%." *N.Y. City Dist. Council of Carpenters Pension Fund v. E. Millenium Const., Inc.*, No. 3 Civ. 5122, 2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21, 2003); *see also N.Y. City Dist. Council of Carpenters v. Metro Furniture Servs. LLC*, No. 11 Civ. 7074, 2012 WL 4492384, at *3 (S.D.N.Y. Sept. 28, 2012) ("[T]he common practice among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." (citing N.Y. C.P.L.R. §§ 5001–04.")). Accordingly, the Court grants pre-judgment interest of 9% from the date of the Award, April 1, 2024.

8

### D.     Post-Judgment Interest

The Union also seeks post-judgment interest. *See* Pet. at 7. Such interest "shall be allowed on any money judgment in a civil case recovered in a district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Awards of post-judgment interest under § 1961 are mandatory. *See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (collecting cases). An order confirming an arbitral award is to be "docketed as if it was rendered in an action," and a judgment in an arbitration must "have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13(d). Thus, § 1961 applies to actions to confirm arbitral awards. *See, e.g., Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004) (awarding post-judgment interest in an arbitration case). The Court therefore also awards post-judgment interest, to accrue from the date judgment is entered until respondents satisfy their payment obligations.

## CONCLUSION

For the reasons stated above, the Court confirms the Award in favor of the Union and issues judgment in the amount of $421,353.56, plus prejudgment interest of 9% from the date of the Award—April 1, 2024—through the date of this judgment, plus post-judgment interest.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 13, 2025
      New York, New York